# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Jabari Dailey,
     Petitioner,


     vs.                         Case No. 1:07cv643
                                 (Barrett, J.; Black, M.J.)

Warden, Madison Correctional
Institution,
     Respondent.

---

## REPORT AND RECOMMENDATION

---

Petitioner, an inmate in state custody at the Madison Correctional Institution in London, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition (Doc. 1) and respondent's return of writ with exhibits (Doc. 6).  Also pending before the Court for ruling is petitioner's motion to stay proceedings (Doc. 9), which was filed January 2, 2008.


### Procedural Background

On February 17, 2004, the Hamilton County, Ohio, grand jury indicted petitioner on two counts of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2), with firearm specifications;[1] one count of carrying a concealed weapon in violation of Ohio Rev. Code § 2923.12(A); and one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(3). (Doc. 6, Ex. 1).

---

[1] Petitioner was charged in one count of committing a felonious assault against "Peace Officer Colleen Deegan," and in the second count of committing a felonious assault against "Peace Officer Christopher Vogelpohl."  (*See* Doc. 6, Ex. 1).

After a bench trial, petitioner was found guilty of one of the felonious assault charges with specifications, which stemmed from petitioner's encounter with victim Christopher Vogelpohl, as well as the two weapons offenses.  (*Id.,* Ex. 2).[2]  On February 16, 2005, petitioner was sentenced to consecutive terms of imprisonment of seven (7) years for the felonious assault offense and three (3) years on a firearm specification; petitioner also was sentenced to concurrent eleven (11) month terms of imprisonment for each weapons offense, to be served concurrently with the sentence imposed for the felonious assault offense with specification.  (*Id.,* Ex. 3).

With the assistance of new counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District, wherein he asserted five assignments of error:

> 1.  The judgment of conviction is contrary to law and to the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States in that there was insufficient evidence adduced to establish each and every element of each offense beyond a reasonable doubt.

> 2.  The judgment of conviction is contrary to the manifest weight of the evidence.

> 3.  The trial court erred to the prejudice of appellant by overruling his motions for judgment of acquittal.

> 4.  The trial court erred to the prejudice of appellant's Sixth Amendment right to trial by jury, and to due process of law, in violation, respectively, of the Sixth and Fourteenth Amendments to the U.S. Constitution, and Art. I, §§ 9 and 16 of the Ohio Constitution, by (1) imposing a prison sentence, and (2) by imposing a sentence of more than the minimum prison sentence, where the findings necessary to such sentences were made by the trial court, not by the jury. . . .

---

[2]  With respect to the felonious assault charge involving alleged victim Colleen Deegan, the trial court granted the petitioner's motion for acquittal under Ohio R. Crim. P. 29 at the close of the State's case-in-chief based on the determination that the evidence was insufficient to establish petitioner's guilt on that count.  (*See* Doc. 6, Ex. 25, Tr. 170-72).

2

     5.  The trial court erred to the prejudice of appellant's right to due process of law and his Eighth Amendment right to be free from cruel and unusual punishment by imposing a sentence greater than that permitted by law.

(*Id.*, Ex. 4).

     On May 10, 2006, the Court of Appeals overruled the first three assignments of error challenging petitioner's conviction, but sustained the fourth assignment of error challenging petitioner's sentence absent jury findings under the Sixth Amendment;[3] and the court vacated the sentence and remanded the matter to the trial court for re-sentencing.  (*Id.,* Ex. 9).

     In its decision on direct appeal, the state appellate court also made the following factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[4] regarding the incident resulting in petitioner's conviction:

     In February 2004, the Cincinnati police learned from a confidential informant that defendant-appellant Jabari Dailey, a convicted felon, would be traveling in a car on February 6, 2004, in the area near Beekman Street, and that he would be armed with an assault-type weapon.  The police formulated a plan to follow the car to Beekman Street, pull it over, and arrest Dailey.  On February 6, undercover officers Christopher Vogelpohl and Colleen Deegan watched Dailey enter a car as a passenger.  They followed the car to Beekman Street, where it was pulled by uniformed officers in a marked police cruiser.  But before the officers could arrest Dailey, he jumped out of

---

    [3] The court also found that petitioner's fifth assignment of error challenging petitioner's sentence under the Eighth Amendment was "rendered moot and need not be addressed," given that the fourth assignment of error had been sustained.  (*See* Doc. 3, Ex. 9, p. 7).

    [4] Specifically, 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Petitioner has neither cited nor presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein.  Therefore, he has not shown that such findings are erroneous.

3

the car and started running down Beekman Street.

Multiple officers chased Dailey as he ran down Beekman Street and then fled down an icy hillside. As he was running down the hill, Dailey fell, and a sawed-off shotgun fell out of his coat onto the ground. Dailey picked up the gun and pointed it at a uniformed officer, before continuing down the hill.

In the meantime, Officers Deegan and Vogelpohl had driven to a street below the hillside. The officers exited from their car and took up positions about ten feet apart, next to some parked cars. When Dailey arrived at the bottom of the hill, the officers identified themselves and ordered Dailey to stop and drop his gun. Dailey ignored their commands and kept moving. He made eye contact with Officer Vogelpohl, raising his gun toward him. Officer Vogelpohl fired his weapon at Dailey, but missed him; Officer Deegan also fired, hitting Dailey twice.

On the way to the hospital, Dailey initiated a discussion of the offense. After being advised of his *Miranda* rights, Dailey gave a taped statement in which he admitted that he had been carrying a gun and had not tried to get rid of it, but he denied any intent to shoot the officers. Daily stated that he did not want to be caught and that he hoped the police would kill him.

(*Id.,* pp. 1-2).

Petitioner's counsel timely appealed the decision overruling petitioner's first three assignments of error to the Supreme Court of Ohio. (*See id.,* Ex. 10). On October 4, 2006, the state supreme court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 12).

On November 30, 2006, in a "nunc pro tunc" entry, the trial court re-sentenced petitioner on remand to the same terms of imprisonment as previously imposed. (*Id.,* Ex. 13). Petitioner's appellate counsel timely appealed to the Ohio Court of Appeals, First Appellate District, alleging as the sole assignment of error that "[t]he trial court erred to the prejudice of appellant by sentencing him, over

4

objection, under the penalties provided by law prior to S.B.2, effective in 1996, and without resort to the sentencing guidelines set out in the sentencing statutes in effect at the time of the offense and the date of sentencing." (*Id.,* Ex. 14). On December 19, 2007, the Court of Appeals overruled the assignment of error and affirmed the trial court's judgment. (*See* Doc. 9, Ex. 2). Upon review of the court's current docket records accessed via the internet, it appears that on January 29, 2008, petitioner filed an appeal from this decision to the Supreme Court of Ohio, which is still pending before that court.

Finally, on February 10, 2006, while petitioner's direct appeal was pending before the Ohio Court of Appeals, petitioner filed a *pro se* petition for post-conviction relief with the Hamilton County Court of Common Pleas. (Doc. 6, Ex. 17). In the petition, petitioner alleged that his trial counsel was ineffective by (1) failing to obtain an expert witness in "ballistics analysis" to show that petitioner was shot from behind by Officer Vogelpohl, as opposed to Officer Deegan, and (2) failing to call certain witnesses to testify at trial for the defense. (*See id.*). On March 9, 2007, the trial court denied the petition, as well as petitioner's motion for appointment of expert assistance in ballistics analysis. (*Id.,* Ex. 21).

On June 5, 2007, petitioner filed a *pro se* notice of delayed appeal and motion for leave to appeal to the Ohio Court of Appeals, First Appellate District, from the trial court's March 9, 2007 entry. (*Id.,* Ex. 22). On June 27, 2007, the Ohio Court of Appeals overruled the motion because petitioner had "failed to provide sufficient reasons for failure to perfect an appeal as of right." (*Id.,* Ex. 24). Upon review of the trial court's current docket records available on the internet, it appears that petitioner never attempted to appeal that decision to the Supreme Court of Ohio.

Soon thereafter, in August 2007, petitioner filed the instant federal habeas corpus petition. (*See* Doc. 1). Petitioner alleges three grounds for relief:

**Ground One:**  Insufficient evidence.

**Supporting Facts:**  State's failure to show that the petitioner[] committed an overt act.

**Ground Two:**  Manifest weight of evidence.

**Supporting Facts:**  It was not testified to that appellant pointed a gun.

**Ground Three:**  Trial court err[]ed in not granting acquittal pursuant [to] Crim.R. 29.

**Supporting Facts:**  There was absen[ce] of proof beyond a reasonable doubt [of] the guilt of the appellant.

(*Id.*, pp. 6-9).

Respondent does not argue, nor does it appear, that the petition is barred from review on statute of limitations grounds.  In the return of writ, respondent has addressed each of petitioner's claims, which were raised and considered in the direct review proceedings.  (*See* Doc. 6, Brief, pp. 11-23).

After respondent filed the return of writ in November 2007, petitioner filed a motion to hold the petition in abeyance.  (Doc. 9).  In the motion, petitioner contends that a stay is necessary for two reasons: (1) his "pending SENTENCING APPEAL . . . is still being adjudicated within the STATE COURTS[;]" and (2) he is having "a Ballistics Analysis . . . performed on his Post-Conviction Petition claim," the results of which have "not been rendered as of yet."  (*Id.*).

In support of his motion for stay based on the ballistics analysis being conducted, petitioner has submitted a letter dated October 15, 2007 from his attorney to a forensic ballistics consultant in Forth Worth, Texas, enclosing a check in the amount of $2000 to retain the consultant's services on petitioner's behalf.  (*See id.,* Ex. 4).  In the letter, petitioner's counsel stated:

. . . .I had contacted you back in November of 2006, and at that time the court gave the indication that it would pay your fees to conduct an independent evaluation of the shooting at issue.  However, the court changed its mind and declined to offer financial assistance.  Since then, my client's family has been paying funds into my trust account until they were able to accumulate the funds necessary to retain you.

I have enclosed records for your review.  In sum, the issue is whether the shooting took place as the police claim, or as Mr. Dailey claims. The police claim that Mr. Dailey stood and pointed a gun at them as they shot him.  Mr. Dailey claims that he was not pointing a gun at the officers and that he had his back to the officers at the time of the shooting.

(*Id.*).

## OPINION

### A. Petitioner's Motion For Stay (Doc. 9) Should Be Denied

As petitioner apparently understands in moving to stay the instant proceeding (Doc. 9), a federal habeas petition may in certain circumstances be stayed so that the petitioner can return to the state courts to pursue an unexhausted claim for relief.  The Supreme Court has held, however, that the district court's discretion to issue a stay is circumscribed to the extent it must "be compatible with [the] purposes" of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *Rhines v. Weber,* 544 U.S. 269, 276 (2005).

In *Rhines,* the Court pointed out that one of the AEDPA's purposes is to "reduce delays in the execution of state and federal criminal sentences" based on the "well-recognized interest in the finality of state judgments."  *Id.* (quoting *Woodford v. Garceau,* 538 U.S. 202, 206 (2003), and *Duncan v. Walker,* 533 U.S. 167, 179 (2001)).  In addition, the AEDPA's statute of limitations tolling provision was intended to "reinforce[] the importance of *Lundy*'s "simple and clear instruction to potential litigants:  before you bring any claims in federal court, be sure that you first have taken each one to state court."  *Id.* at 276-77 (quoting *Rose v. Lundy,* 455 U.S. 509, 520 (1982)).

The Court went on to determine that:

Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes.  Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings.  It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his

7

claims in state court prior to filing his federal petition. . . .

For these reasons, stay and abeyance should be available only in limited circumstances.

*Id.* at 277.

The Court held that stay and abeyance "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," and that, "even if a petitioner had good cause for that failure," it would be an abuse of discretion for the court to grant a stay where the unexhausted claims "are plainly meritless" or the "petitioner engages in abusive litigation tactics or intentional delay." *Id.* at 277-78.  On the other hand, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  *Id.* at 278.

In this case, petitioner has exhausted his state court remedies to the extent he has already raised and had his claims for relief considered by the state courts on direct review of his conviction and sentence.  Petitioner is not attacking his sentence, which is the subject of an appeal on a state-law issue that is now pending before the Supreme Court of Ohio from the November 30, 2006 "nunc pro tunc" sentencing entry.  Moreover, the ballistics analysis that petitioner has suggested is currently being conducted by a retained consultant  has no bearing on the resolution of petitioner's grounds for relief, all of which challenge petitioner's conviction based on the evidence presented at trial.

This is not a "mixed petition" case involving exhausted and unexhausted claims.  *See generally Rhines,* 544 U.S. at 271.  The Court is not required to dismiss or stay "a petition containing only exhausted claims because the petitioner attempts to raise additional but unexhausted claims during the course of the habeas corpus proceedings."  *Jones v. Parke,* 734 F.2d 1142, 1145 (6th Cir. 1984). Because this case does not involve a "mixed petition," the stay-and-abeyance procedure is inapplicable.

Moreover, even assuming, *arguendo,* any results from the "ballistics analysis" purportedly being conducted would affect this Court's disposition of

petitioner's claims challenging only his conviction,[5] petitioner would not meet the criteria for granting a stay under *Rhines*.  Although petitioner's family apparently had difficulty raising the funds required to independently hire an expert in ballistics analysis, petitioner has not provided an adequate justification as to why counsel's letter retaining a consultant on petitioner's behalf was not sent until October 15, 2007, nearly three years after entry of the trial court's February 16, 2005 judgment of conviction and sentence.

Indeed, petitioner failed to raise any claim based on the need for an expert in ballistics analysis until nearly a year after his conviction, when he alleged for the first time in his state post-conviction petition filed February 10, 2006 that his trial counsel was ineffective in failing to obtain the services of such an expert.  (*See* Doc. 6, Exs. 3, 17).  Petitioner failed to timely appeal the trial court's March 9, 2007 entry denying his post-conviction petition and accompanying motion for appointment of an expert in ballistics analysis; moreover, petitioner's motion for delayed appeal, filed nearly two months too late, ultimately was denied because petitioner did not provide "sufficient reasons for [his] failure to perfect an appeal as of right."  (*See* Exs. 22, 24).  Finally, it appears that petitioner never attempted to appeal the denial of his delayed appeal motion to the state supreme court.

Under these circumstances, petitioner is unable to demonstrate "good cause" for his failure to exhaust the only "unexhausted" claim asserted in the motion for stay that even arguably pertains to petitioner's grounds for relief challenging only his conviction.

Accordingly, in sum, it is **RECOMMENDED** that petitioner's "Motion To Hold Petitioner's Writ Of Habeas Corpus In Abeyance" (Doc. 9) be **DENIED**.

### B.  Petitioner Is Not Entitled To Relief Based On His Claims Challenging The Sufficiency Of Evidence With Respect To His Felonious Assault Conviction

In the petition, petitioner essentially contends that he is entitled to habeas corpus relief with respect to his felonious assault conviction, because the evidence was insufficient to establish his guilt beyond a reasonable doubt (Grounds One and

---

[5]  It is noted, however, that at this juncture, there is no way of knowing whether the awaited results of the ballistics analysis sought by petitioner will even support petitioner's defense theory, much less undermine the evidence presented by the State at trial to establish petitioner's guilt.

Three) and because the conviction was against the manifest weight of the evidence (Ground Two).  (Doc. 1, pp. 6-9).[6]

As an initial matter, the Court concludes that petitioner's "manifest weight of evidence" claim alleged in Ground Two is not cognizable in this federal habeas proceeding.  A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law."  28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"); *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir.), *cert. denied,* 540 U.S. 930 (2003).

Petitioner's "manifest weight of the evidence" claim raises an issue of state-law only.  *See Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982); *State v. Thompkins,* 678 N.E.2d 541, 546-48 (Ohio 1997), *superseded by state constitutional amendment on other grounds, State v. Smith,* 684 N.E.2d 668 (Ohio 1997), *cert. denied,* 523 U.S. 1125 (1998).  Therefore, only petitioner's sufficiency of evidence claim alleged in Grounds One and Three of the petition triggers a due process issue subject to review on the merits herein.

In this case, the Ohio Court of Appeals was the only state court to address the merits of the federal due process claim challenging the sufficiency of evidence.  Citing only state case-law, the court overruled petitioner's claims of error as alleged in Grounds One and Three of the petition; in so ruling, the court made factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[7] and

---

[6] It appears from the face of the petition that petitioner seeks to challenge only his felonious assault conviction.  Indeed, it appears that petitioner never seriously sought to dispute his guilt on the weapons charges in the state courts, stating only in a one-sentence request to the Ohio Court of Appeals "to review the record and . . . find that there was insufficient evidence to support the trial court's finding of guilt" on the concealed weapon charge.  (*See* Doc. 6, Ex. 25, Tr. 24, 245-46 & Exs. 4, 10).  Petitioner did not challenge either of the weapons convictions on further appeal to the Supreme Court of Ohio.  (*See id.,* Ex. 10).  Therefore, even assuming, *arguendo,* that petitioner seeks to attack his concealed weapon conviction herein, it appears such claim is waived due to petitioner's procedural default in failing to raise the issue to the state supreme court.  *See, e.g., O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

[7] *See supra* p. 3 n.4.

10

reasoned in relevant part as follows:

> When reviewing a trial court's denial of a Crim.R. 29 motion, the court applies the same standard of review as it would in reviewing a challenge based upon the sufficiency of the evidence.  When a defendant claims his conviction is supported by insufficient evidence, this court must review the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found all the elements of the crime proved beyond a reasonable doubt. . . .

> Dailey . . . challenges his conviction for felonious assault.  Dailey contends there was insufficient evidence to show that he attempted to cause serous physical harm to Officer Vogelpohl.  Dailey relies upon the Ohio Supreme Court's decision in *State v. Brooks*[, 542 N.E.2d 636 (Ohio 1989),] as well as the Eighth Appellate District's decision in *State v. Goggans*[, No. 79578, 2002 WL 973092 (Ohio Ct. App. May 9, 2002) (unpublished), *appeal dismissed,* 775 N.E.2d 857 (Ohio 2002)].  In *Brooks,* the Ohio Supreme Court held that "[t]he act of pointing a deadly weapon at another without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)."  In *Goggans,* the Eighth Appellate District, applying *Brooks,* reversed a defendant's conviction for felonious assault on [the] basis that the state had failed to present any evidence that (1) the defendant had pointed his weapon at a police officer prior to the officer shooting him and (2) that the defendant had overtly acted to cause the officer physical harm.

> In *Goggans,* the officer testified that, as he was chasing the defendant, the defendant put his hands in the air, waved them at the officer, and then turned around and started running.  As the defendant was running away from him, the officer then saw that the defendant was making grabbing movements towards his waist.  The officer yelled at the defendant to stop.  The defendant, who still had his back to the officer, pulled out a gun and brought it to his side.  The officer testified that he saw "a black object coming back toward [himself]," and then fired his weapon at the defendant, hitting him in the ankle.

Dailey contends that Officer Deegan's and Officer Vogelpohl's testimony that the gun "was coming up" toward him was no different than the officer's testimony in *Goggans* that the gun was coming back towards him. We disagree.

Dailey's case is factually distinct from *Goggans*. In Dailey's case, the police had information that he was a convicted felon and that he would be carrying an assault-type weapon. When they tried to stop the car and arrest Dailey, he fled from the car. He fell down a hill during the chase, and his gun was visible to police. When police ordered him to stop, Dailey then pointed his gun at a uniformed officer and proceeded down the hill. When Dailey was later confronted by two undercover police officers who identified themselves, and who ordered him to drop his gun, Dailey raised the gun toward Officer Vogelpohl, made eye contact with him, and was then shot by Officer Deegan.

Moreover, we agree with the state that Dailey's case is more factually similar to *State v. Ross*[, No. 20031, 2004 WL 1348741 (Ohio Ct. App. June 10, 2004) (unpublished), *appeal dismissed,* 816 N.E.2d 1079 (Ohio 2004),] and *State v. Jackson*[, No. 72014, 1997 WL 764760 (Ohio Ct. App. Dec. 11, 1997) (unpublished)]. In *Ross,* the Second Appellate District held that the defendant's repeated act of pointing a gun at a police officer and his refusal to drop the gun were sufficient to support a felonious-assault conviction. Similarly, in *Jackson,* the Eighth Appellate District held that there were sufficient facts from which one could conclude that the defendant had intended to cause physical harm to a police officer, where the defendant, whom police had cornered on the roof of a garage, had thrown his jacket at an officer and then pointed his gun at the officer, who then shot him. We, therefore, hold that [the] state presented sufficient evidence to show that Dailey had attempted to cause physical harm to Officer Vogelpohl.

(Doc. 6, Ex. 9, pp. 3-5) (footnotes to case citations omitted).

In the usual case, a federal habeas petitioner is not entitled to relief unless the state court's adjudication of his constitutional claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942. An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

In this case, although the Ohio Court of Appeals did not cite Supreme Court precedent in addressing petitioner's sufficiency of evidence claim, the court

13

correctly identified the standard of review which was established by the Supreme Court in *Jackson v. Virginia,* 443 U.S. 307 (1979), as governing the resolution of this issue.  The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense.  *In Re Winship,* 397 U.S. 358, 363-64 (1970).  Therefore, as the Ohio Court of Appeals recognized (*see* Doc. 6, Ex. 9, p. 3), when a prisoner raises a sufficiency of evidence claim in a petition for writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt.  *Id.* at 326.  Rather, under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983).  It is the jury's (or, in this case, the trial court's) responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence.  *Jackson,* 443 U.S. at 319.  Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the trier of fact which convicted the petitioner.  *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (*per curiam*), *cert. denied,* 490 U.S. 1049 (1989).

In this case, petitioner was convicted of felonious assault under Ohio Rev. Code § 2903.11(A)(2), which provides: "No person shall knowingly . . . [c]ause or attempt to cause physical harm to another by means of a deadly weapon."  Here, it is undisputed that at the time of the offense, petitioner was carrying a deadly weapon–a sawed-off shotgun which was "fully operational."  (*See* Doc. 6, Ex. 25, Tr. 17).  Petitioner claims, however, that the evidence presented at trial was insufficient to establish beyond a reasonable doubt that he knowingly attempted to cause physical harm to Officer Vogelpohl.  Specifically, petitioner contends that (1) the State failed to prove that he pointed the gun he was carrying at Officer Vogelpohl; and (2) "even if it can be concluded that [he] did in fact point the gun at Vogelpohl," such evidence without additional evidence of intention on his part was insufficient to establish his guilt for felonious assault.  (*See* Doc. 1, pp. 6-9; *see also* Doc. 6, Ex. 4, pp. 5-11 & Ex. 10).

14

Here, contrary to petitioner's first contention, the State presented sufficient evidence to establish that petitioner in fact pointed the gun at Officer Vogelpohl, and thus that petitioner acted "knowingly" within the meaning of the felonious assault statute.  *See State v. Brooks,* 542 N.E.2d 636, 640 (Ohio 1989) (quoting *State v. Tate,* 377 N.E.2d 778, 779 (Ohio 1978)) (because there was "no contention by the defendant that he did not know what he was doing when he pointed [an unloaded] gun at [a police officer]," the "jury could find that the defendant acted knowingly when he pointed the gun at the officer").

Officer Deegan, who was in close proximity to petitioner and Officer Vogelpohl at the time of the offense, testified that she saw petitioner with the gun in his right hand as he was coming down the hill and, when petitioner was confronted by Officer Vogelpohl at a distance of about ten feet, she saw petitioner "draw the weapon up" with both hands or make a "coming-up motion" to Vogelpohl whereby she saw the barrel of petitioner's gun.  (Doc. 6, Ex. 25, Tr. 40-41, 51, 64-65).

Officer Vogelpohl provided the following corroborating testimony about the incident:

> . . .[H]e [petitioner] saw me.  I saw him.  I pointed my firearm at him, told him, "Police.  Stop.  Stop," at which point he started running toward his right.

> We made eye contact again when we got to the front of the cars, and I saw him and made eye contact with him.  Then I see the gun.  I tell him, "Drop the gun.  Drop the gun," at which point I see him looking at me, and the gun – his gun starting to come up toward me, and I knew he was going to shoot me. . . .

(*Id.,* Tr. 76; *see also id.,* Tr. 83).  Later in his examination, he reiterated: "This one was like, I'm going to have to shoot this guy or I'm going to get shot.  *The gun is pointed right at me.*  He's looking at me.  And in my mind, I'm thinking he's going to shoot me." (*Id.,* Tr. 104).

A rational trier of fact could infer from Officer Deegan's and Officer Vogelpohl's trial testimony that petitioner pointed the shotgun he was carrying at Vogelpohl when confronted face-to-face by Vogelpohl.  Petitioner testified at trial

15

that he did not aim the gun he was carrying at anyone or try to shoot anyone, but rather was shot in the back while trying to protect himself. (*See id.,* Tr. 198, 212-16). However, viewing all the evidence in the light most favorable to the prosecution and out of deference to the trial court's resolution of the conflicts in testimony, the undersigned concludes that a rational trier of fact could reject petitioner's version of events as lacking in credibility.[8]

Petitioner's second contention that the evidence was insufficient to establish that he attempted to cause serious physical harm to Officer Vogelpohl poses a more difficult question. As the Ohio Court of Appeals pointed out in addressing this issue, the Supreme Court of Ohio has held that in the case of an attempted offense, "[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *Brooks,* 542 N.E.2d at 642; *cf. Nash v. Eberlin,* No. 06-4059, 2007 WL 4438008, at *4 (6th Cir. Dec. 14, 2007) (unpublished) (habeas relief granted because the evidence that the petitioner retrieved a gun from another room during an argument with his wife in order to scare her and that the gun went off twice during a struggle with his son was insufficient to establish he knowingly attempted to cause physical harm through the use of a deadly weapon under Ohio's felonious assault statute, particularly given the lack of evidence that "the gun was pointed at anyone").

In reaching this conclusion, the state supreme court in *Brooks* quoted from prior precedent addressing attempt offenses, wherein the court held that "[a] 'criminal attempt' is when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in the commission of the crime." *Brooks,* 542 N.E.2d at 640 (quoting *State v. Woods,* 357 N.E.2d 1059, syllabus ¶1 (Ohio 1976), *judgment vacated on other grounds,* 438 U.S. 910 (1978)). "To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose." *Id.* Continuing to quote *Woods,* the *Brooks* court explained:

---

[8] Petitioner suggests that because he was shot in the back of his left shoulder and behind his left ear, his version of events is more credible than the testimony of Officers Deegan and Vogelpohl. However, a rational juror could find that Officer Deegan, who was standing ten feet away from Vogelpohl and twenty feet from petitioner, could have shot petitioner in those areas while petitioner was turned toward and aiming a gun at Vogelpohl. Moreover, the State presented evidence regarding the shell casings found at the scene, as well as the shot patterns that were heard, which supported the police officers' version of events.

American courts have generally agreed that intent to commit a crime does not of itself constitute an attempt, nor does mere preparation. *The difficulty is to formulate a standard that excludes preparations prior to an actual attempt to commit a crime, while including, as punishable, those acts which are so dangerously close to resulting in a crime that intervention and arrest by police are justified, even before the "last proximate act."* Various tests have been suggested and followed in other jurisdictions. . . . Ohio's statutory definitions of criminal offenses in the Revised Code are based largely upon the American Law Institute's Model Penal Code [§ 5.01], and the standard adopted in the latter Code appears to be workable, reasonable, and consistent with the language of [Ohio's "attempt" statutory provision] R.C. 2923.02(A). . . . The application of this standard will of course depend upon both the nature of the intended crime and the facts of the particular case. A substantial step in the commission of a robbery may be quite different from that in arson, rape, or some other crime. *But this standard does properly direct attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime, while allowing police intervention, based upon observation of such incriminating conduct, in order to prevent the crime when the criminal intent becomes apparent.*

*Id.* at 641 (quoting *Woods,* 357 N.E.2d at 1063) (emphasis added).

It is well-settled in Ohio that "the act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *State v. Green,* 569 N.E.2d 1038, 1041 (Ohio 1991); *see also Brooks,* 542 N.E.2d at 643 (affirming felonious assault conviction in case where the defendant pulled out a revolver in the heat of a "volatile argument" with the victim and "angrily told her he would kill her"). Ohio courts have further held that a "direct threat is not the only action which raises the act of pointing a gun at a victim to the level of a felonious assault." *See Goggans, supra,* 2002 WL 973092, at *2. As long as there is evidence of an "overt act directed toward an assault by the defendant," the conviction will be upheld. *Id.* (and cases cited therein).

In the instant case, it appears from the record that petitioner did not make any verbal threats when he pointed his gun at Officer Vogelpohl. Therefore, the

17

undersigned must consider whether petitioner's overt actions, which include omissions, *see Brooks,* 542 N.E.2d at 640, nevertheless "convincingly demonstrate a firm purpose" by petitioner to commit a felonious assault offense that would have been achieved absent police intervention to prevent the apparently imminent crime. *See State v. Clark,* No. 58270, 1991 WL 127271, at *3 (Ohio Ct. App. June 27, 1991) (unpublished) (citing *Brooks,* 542 N.E.2d at 641), *appeal dismissed,* 579 N.E.2d 1392 (Ohio 1991).

The question is a close one. In the aftermath of *Brooks*, Ohio appellate courts have held that the overt actions required to raise the pointing of a gun to a felonious assault offense must go "beyond behavior that merely causes another to believe physical harm is imminent," because "felonious assault focuses on the intent of the perpetrator as manifested through his actions" in contrast to aggravated menacing which "focuses on the perception of the victim as a result of the perpetrator's actions." *See id.*; *see also Goggans, supra,* 2002 WL 973092, at *3. Moreover, state appellate courts have refused to find that a defendant's "aborted attempt to elude police before confronting them with a loaded weapon," standing alone, constitutes an overt action sufficient to support a felonious assault conviction. *See, e.g., State v. Cochran,* No. 91AP-1371, 1992 WL 142356, at *3 (Ohio Ct. App. June 25, 1992) (unpublished), *appeal dismissed,* 602 N.E.2d 251 (Ohio 1992).

In the state cases most factually analogous to the case at hand, the Ohio appellate courts have reached differing conclusions; in finding the evidence was either sufficient or insufficient to sustain the felonious assault conviction, these courts have often engaged in hair-splitting over seemingly insignificant details to distinguish themselves from the opposing line of cases.

The Court will first discuss the line of cases wherein the evidence was deemed insufficient to support the conviction. The Ohio Court of Appeals discussed one of these cases, *Goggans,* in addressing petitioner's sufficiency of evidence claim on direct appeal. As the Ohio Court of Appeals pointed out, in *Goggans, supra,* 2002 WL 973092, at *2-3, the offense occurred when the defendant was in the process of fleeing the victim police officer, who had told defendant to "stop, freeze." According to the officer, the defendant pulled a gun out of his waistband and brought it to his side while running away from the officer; when the defendant started to turn "back around toward" the officer, the officer, who testified he was "scared for [his] life," shot the defendant in the ankle and handcuffed him.

18

Similarly, in *Cochran, supra,* 1992 WL 142356, at *3, the state appellate court found that the defendant's flight from police officers evidencing "no more than his intention to avoid capture," in light of one officer's testimony that the defendant chose not to shoot his weapon, was insufficient to sustain the defendant's conviction for felonious assault.[9]  *State v. Houser,* No. 57224, 1990 WL 109085 (Ohio Ct. App. Aug. 2, 1990) (unpublished), *appeal dismissed,* 569 N.E.2d 505 (Ohio 1991), was another case involving a police chase wherein the evidence of felonious assault was deemed insufficient.  In that case, the charged offense occurred when the defendant, who had been fleeing from police in a cruiser, exited the vehicle; the pursuing officers yelled, "freeze," and the defendant "turned around and reached into the cruiser and grabbed a shotgun," which he proceeded to aim at the chest of one of the officers while backing into the cruiser's front seat.  The driver sped off after the officer fired two shots into the cruiser, and was not identified as the culprit until the next day at a hospital where he had been admitted for a gunshot wound.

Within this line of cases , perhaps the closest case factually to the case-at-hand is *State v. Clark,* No. 58270, 1991 WL 127271 (Ohio Ct. App. June 27, 1991) (unpublished), *appeal dismissed,* 579 N.E.2d 1392 (Ohio 1991).  In *Clark*, the defendant was involved in a car chase with police, which ended when the defendant drove his vehicle into a driveway "all the way to the back of the yard." *Id.* at *1.  The pursuing patrolman left his car parked at the edge of the driveway, drew his gun, positioned himself ten to fifteen feet to the rear of the defendant's vehicle, identified himself as a police officer and three times ordered defendant to come out of his vehicle.  When defendant finally began to exit his vehicle as ordered, he "turned and pointed a gun at [the officer] with two hands."  *Id.*  The defendant ignored the officer's order to "drop whatever he had in his hands," and continued to aim the gun at the officer, who "feared he would be shot," until another police vehicle arrived at the scene.  Only at that juncture did the defendant "conceal[] his hands and the gun by putting them in his vehicle."  *Id.*  Eventually, "[a]fter several warnings," the defendant dropped the gun and was arrested by the police.  *Id.*

In contrast, in another line of cases involving similar factual scenarios, state

---

[9]  In that case, when the defendant reached a fence at the back of a building while being pursued, he "stopped, turned, and pointed the barrel of his sawed-off shotgun directly at" the pursuing officers; when two officers next fired shots at the defendant which missed, the defendant fell against the fence where he was disarmed.

appellate courts have reached the opposite conclusion, finding that the evidence was sufficient to support the felonious assault conviction. Two of these cases, *Ross* and *Jackson*, were relied on by the Ohio Court of Appeals in the instant matter when overruling petitioner's claim of error and affirming his conviction on direct review.[10]

In *Ross, supra,* 2004 WL 1348741, at *1, 3, the defendant was an armed "doorman" at a "drug house" the police were raiding. One of the police officers at the scene "made eye contact" with the defendant, identified himself as a police officer, and ordered defendant "to get down." At that point, the officer noticed that the defendant was holding a handgun, which was later identified as being "fully operational and loaded." The defendant attempted to shut the door, and as he was shutting the door, he looked at the officer and raised the gun with its laser beam pointed at the officer's chest. Despite the officer's repeated orders for the defendant "to get down on the ground," the defendant kept the gun pointed at the officer's chest and continued to attempt to close the door to the building. With the help of two other officers, the officer was able to keep the door from closing and to push it open. While pushing against the door, the officer "repeatedly ordered [the defendant] to 'Drop the gun.'" Once the door was opened and the defendant was cornered behind the door by the police, the defendant again pointed his gun at the officer and ignored the order to "Drop the gun, drop the gun." At that point, one of the other officers shot the defendant in the arm. The defendant did not put his weapon down until he was shot.

The court in *Ross* found that these factual circumstances amounted to "sufficient evidence . . . that [the defendant] was attempting to cause physical harm

---

[10] It is also noted that in a third case not addressed herein by the Ohio Court of Appeals–*State v. Smith,* No. 89AP-1313, 1990 WL 126260, at *3 (Ohio Ct. App. Aug. 30, 1990) (unpublished), *appeal dismissed,* 569 N.E.2d 504 (Ohio 1991), a state appellate court held, without addressing *Brooks*, that the evidence was sufficient to support a felonious assault conviction based on testimony that the defendant had displayed a weapon in a bar; "that when the police officer approached the defendant and told defendant not to take his hand out of his coat pocket, defendant either stumbled backwards or pulled away from the officer and removed a gun from his coat pocket; that defendant then raised the weapon and took aim at the officer; that the weapon was loaded with a full magazine and one bullet in the chamber; and that the officer feared for her life upon perceiving the defendant aiming the weapon at her." The officer shot the defendant in the upper portion of his arm at that point, thereby preventing the defendant from completing the assault. In *Cochran, supra,* 1992 WL 142356, at *3, the court distinguished *Smith* on the basis of a police officer's testimony that the defendant in *Cochran* "chose not to shoot his weapon."

to [the police officer]." *Id.* at *3. In so holding, the court relied not only on the "physical scuffle . . . over the closing of the door," but also "the repeated act of pointing the laser aimed gun at [the officer's] chest while making eye contact with the officer, and [the defendant's] staunch refusal to drop the gun or even cease pointing it at the officer despite being cornered and the police's repeated orders to do so." *Id.*

In *Jackson, supra,* 1997 WL 764760, the police pursued the defendant on foot and eventually found him on the top of a garage. An officer, with gun drawn, ordered the defendant down from the roof, but the defendant would not comply. Instead, the defendant took off his jacket and threw it at the officer's head "to distract the officer while [he] reached for a gun." The defendant then "held the gun waist high and pointed it at the [officer] while "looking in [the officer's] direction." At that point, the officer fired his gun at the defendant, and the defendant jumped off the roof and ran away.

The court held in *Jackson* that "a reasonable trier of fact could find that appellant intended to escape from the armed police officers by firing the gun at [the officer]," reasoning that appellant was prevented from firing his weapon only because the officer fired first. *Id.* at *2. The court further ruled that the "[a]ppellant took substantial steps towards causing physical harm to [the officer] by throwing the jacket, producing the gun, pointing it at [the officer] and looking in [the officer's] direction." *Id.* The court distinguished *Clark* and *Houser* because there was no evidence in those cases that the defendant threw an object at police so he could produce a weapon, or that the defendant was looking at the officers while pointing the gun.

The undersigned also finds instructive two cases involving a knife that was used as the "deadly weapon." In *State v. Williams,* No. 03 CA-A-12-074, 2004 WL 2647602, at *3 (Ohio Ct. App. Nov. 16, 2004) (unpublished), *appeal dismissed,* 823 N.E.2d 457 (Ohio 2005), the victim police officer testified that the defendant, who had been waving the knife from side to side, "'locked in on' her, focused her eyes on her and stopped moving[;]' . . . [the officer] testified that Appellant 'squared off at her' and was 'focused' and 'fixated' on her, holding the knife on her midsection, where 'lots of organs' are located." The court held that although "there was no verbal threat made by Appellant against [the police officer], her actions in 'squaring off' and locking her focus on [the officer] constituted an ample manifestation of intent to cause injury sufficient to constitute a 'threat'" and thus to establish a felonious assault.

In *State v. Workman,* 617 N.E.2d 723 (Ohio Ct. App. 1992), *appeal dismissed,* 613 N.E.2d 1045 (Ohio 1993), the offense giving rise to the felonious assault charge occurred when a police officer [Officer Price] attempted to serve an arrest warrant on the defendant [Workman].  The court reported the following facts:

> Workman began running with Officer Price giving chase.  As he approached a small clearing in the woods, Workman found himself surrounded by other officers.  Workman, brandishing a knife in his left hand, stopped and turned to face Officer Price.  As he observed Workman, who was approximately ten feet away, take a step in his direction, Officer Price ran at Workman, tackling him to the ground.

*Id.* at 724.

The court of appeals held that this evidence was sufficient to establish the defendant's guilt for felonious assault in attempting to physically harm a police officer by means of a deadly weapon.  *Id.* at 726.  The court reasoned in pertinent part:

> We agree there must be some overt act demonstrating a defendant's intent to commit an assault, and we find such an act in the present case.  Officer Price testified that during the foot chase, Workman suddenly stopped and turned.  Workman, holding the knife in his left hand, then stepped toward Price, whereupon Price jumped and tackled Workman to the ground.
>
> From the surrounding circumstances, reasonable minds could conclude that Workman attempted to cause harm to Officer Price.  It may be reasonably inferred that Workman, by holding the knife in his hand, was ready to use it.  Workman's step with knife in hand toward Officer Price may be reasonably interpreted to be a step toward execution of the assault.  These facts constitute a sufficient overt act demonstrating Workman's intent to commit an assault of Officer Price.

*Id.* at 725-26.

The instant case has its own unique set of facts, which this Court must parse

22

through in determining whether or not the Ohio Court of Appeals reasonably applied the *Jackson* standard in holding that petitioner's felonious assault conviction was supported by sufficient evidence. However, upon thorough review of the case-law that has developed in Ohio in the aftermath of *Brooks,* as well as the facts of each of those cases as compared to the instant case, the undersigned concludes that it was not unreasonable for the Ohio Court of Appeals to affirm petitioner's conviction based on the finding that the case-at-hand "is more factually similar to . . . *Ross* . . . and . . . *Jackson*" than the *Goggans/Clark* line of cases reaching the opposite conclusion.

In *Goggans*, *Cochran,* and *Houser*, the charged offenses occurred when the defendants, who were in the process of fleeing from the police, turned and pointed a gun at pursuing police officers in an effort to continue their escape. In contrast, in the instant case, as in *Ross*, *Jackson* and *Workman,* the charged offense occurred when petitioner's escape route was blocked by Officers Vogelpohl and Deegan and petitioner was confronted face-to-face by Officer Vogelpohl. When Vogelpohl confronted petitioner at the bottom of the hill, he identified himself as a police officer and both he and Officer Deegan repeatedly ordered petitioner, who was holding the gun but not pointing it at anyone, to stop and drop his weapon. However, as in *Ross* and *Jackson,* petitioner ignored the officers' orders and instead, raised the gun, which was fully operational, and, while maintaining eye contact with Vogelpohl, aimed it directly at Vogelpohl using both hands.

A rational trier of fact could infer from Officer Deegan's and Officer Vogelpohl's trial testimony that, as in *Williams,* petitioner was "focused" and "fixated" on Vogelpohl when he raised and pointed his gun at Vogelpohl, and thus that petitioner manifested an "intent to cause injury" to Vogelpohl. Both officers testified that, based on their observations of petitioner at that moment, petitioner was going to fire his weapon at Vogelpohl. (*See* Doc. 6, Ex. 25, Tr. 40-41, 76, 83, 91, 104). Indeed, Deegan, who was not then in immediate fear for her own life, stated that she "didn't know if Officer Vogelpohl had fired or if the defendant had fired" when she heard the first "pop" from a gun shot. (*See id.*, Tr. 40).

The undersigned recognizes that in *Clark*, the defendant also was cornered by a police officer and refused to drop his gun when he was ordered to do so. However, in *Clark,* the officer ordered the defendant to drop his gun after defendant exited a vehicle with a gun already pointed at the officer, whereas petitioner raised and aimed his weapon at Vogelpohl after and despite of Vogelpohl's and Deegan's repeated orders to drop the gun in his hand. In addition,

unlike *Clark,* Vogelpohl testified that even after the first two shots were fired, he saw petitioner turn "back toward me, eye contact again, . . . [with] the gun coming up" again. (*See id.,* Tr. 76-77, 79, 80, 82, 83). Finally, *Clark* can be explained because in that case the defendant gave up, first trying to conceal and finally dropping his gun, as soon as another police vehicle arrived at the scene.

In this case, as in *Jackson* and *Ross,* a rational trier of fact could find that petitioner was prevented from firing his weapon at Vogelpohl, thereby completing the assault, only because Officer Deegan intervened and shot him first.[11] As one Ohio appellate court stated in distinguishing the use of a knife as opposed to a firearm in attempting to cause physical harm by use of a deadly weapon:

> A loaded gun, pointed at an individual is one small step away from the completion of felonious assault. All the preparatory steps have been taken; the next motion irrevocably commits the assailant to the completion of the assault.

*State v. Smith,* No. 98CA007168, 2000 WL 110411, at *2 (Ohio Ct. App. Jan. 26, 2000) (unpublished).

Accordingly, in sum, the claim alleged in Ground Two of the petition raises a state-law issue, which is not subject to review by this Court. With respect to petitioner's remaining claims alleged in Grounds One and Three challenging the sufficiency of evidence, the undersigned concludes that a rational trier of fact could determine from the evidence presented by the State at trial to establish petitioner's guilt on the felonious assault charge that petitioner not only pointed a gun at Officer Vogelpohl but, based on all the circumstances surrounding their confrontation, also committed corroborating "overt" acts and/or omissions "convincingly demonstrat[ing]" his intention to fire his weapon at Vogelpohl. A

---

[11] It is noted that petitioner may try to distinguish *Jackson* and *Ross* by arguing that the *Jackson* court relied in part on the fact that the defendant committed the "overt act" of throwing a jacket at a police officer's head to distract the officer while he retrieved his weapon and that the *Ross* court relied in part on a "physical scuffle . . . over the closing of the door." However, the undersigned is not persuaded that these differences are significant. Here, petitioner was outside fleeing on foot from uniformed police officers stationed up the hill, and already had the weapon in his hand, when he was confronted by Officers Vogelpohl and Deegan. Therefore, unlike the defendant in *Ross,* he had no door to retreat behind; unlike the defendant in *Jackson,* he did not have to do anything more than raise, aim and fire his gun at Vogelpohl in order to complete the act of a felonious assault.

rational trier of fact also could find that petitioner was prevented from completing the assault on Vogelpohl only because Officer Deegan intervened, based on her observation of petitioner's behavior, in order to prevent the crime when petitioner's criminal intent became apparent.  *See Brooks,* 542 N.E.2d at 641; *Woods,* 357 N.E.2d at 1063.

For these reasons, the undersigned further concludes that the state courts' adjudication of petitioner's sufficiency of evidence claim neither is contrary to nor involves an unreasonable application of the *Jackson* standard, and is not based on an unreasonable determination of facts in light of the evidence presented at trial. Petitioner, therefore, is not entitled to habeas corpus relief based on the claims alleged in the instant petition challenging his felonious assault conviction.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's "Motion To Hold Petitioner's Writ Of Habeas Corpus In Abeyance" (Doc. 9) be **DENIED**.

2.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

3.  A certificate of appealability should not issue with respect to the state-law claim alleged in Ground Two of the petition, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on such claim.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  However, a certificate of appealability should issue with respect to the claim alleged in Grounds One and Three challenging the sufficiency of evidence with respect to petitioner's felonious assault conviction, because petitioner has made a substantial showing of a "viable claim of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further."  *See id.*; *see also Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)).

4.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and, therefore, should **GRANT** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a);

*Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: 3/18/08                                   **/s/Timothy S. Black**

      cbc                                   Timothy S. Black
                                                United States Magistrate Judge

K:\BRYANCC\2008 habeas orders\07-643denystay-exhcls.denypet-sufficevid-felass-attempt.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

Jabari Dailey,
      Petitioner

    vs                    Case No. 1:07cv643
                             (Barrett, J.; Black, M.J.)

Warden, Madison Correctional
Institution,
      Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).